IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
At Pittsburgh

**CHRISTOPHER J. REGAN,**

    *Plaintiff,*

v.   Civil Action No. __23-822_____

**BORDAS & BORDAS, PLLC,**
**BORDAS MINERAL MANAGEMENT, LLC,**
and **WHEELHOUSE CREATIVE, LLC,**

    *Defendants*.

# COMPLAINT

## PARTIES

    1.    Defendant Bordas & Bordas, PLLC ("Bordas & Bordas") is an at-will professional limited liability company organized under the laws of the State of West Virginia with its principal place of business located in Wheeling, Ohio County, West Virginia. Bordas & Bordas is a law firm that regularly conducts business and offers to do business in the State of West Virginia, the Commonwealth of Pennsylvania (including Allegheny County, Pennsylvania) and the State of Ohio. Bordas & Bordas maintains an office at One Gateway Center in Pittsburgh, Pennsylvania. As a law firm whose practitioners focus on the litigation of personal injury claims, Bordas & Bordas has a ubiquitous presence in Pittsburgh, Allegheny County and elsewhere in western Pennsylvania, heavily advertising its services via television, radio, billboards and other printed media, and entering into highly visible marketing partnerships with professional sports franchises

including the National Football League's Pittsburgh Steelers, Major League Baseball's Pittsburgh Pirates and the National Hockey League's Pittsburgh Penguins.

2.  Defendant Bordas Mineral Management, LLC ("Bordas Mineral") is an at-will limited liability company organized under the laws of the State of West Virginia with its principal place of business located in Wheeling, Ohio County, West Virginia. Bordas Mineral provides various services to oil, gas and mineral rights owners and regularly conducts business and offers to do business in the State of West Virginia, the Commonwealth of Pennsylvania (including Allegheny County, Pennsylvania) and the State of Ohio. In particular, Bordas Mineral holds itself out as providing royalty revenue monitoring, royalty revenue auditing, lease negotiation and review, and assistance with the sale of oil, gas and mineral royalties and interests; i.e., services that target customers with interests in oil and gas exploration and production in western Pennsylvania's Marcellus Shale formation.

3.  Defendant Wheelhouse Creative, LLC ("Wheelhouse") is an at-will limited liability company organized under the laws of the State of West Virginia with its principal place of business located in Wheeling, Ohio County, West Virginia. Wheelhouse is a full service advertising agency that regularly conducts business and offers to do business in the State of West Virginia, the Commonwealth of Pennsylvania (including Allegheny County, Pennsylvania) and the State of Ohio. A substantial portion of Wheelhouse's services – including the high-profile advertising and marketing campaigns undertaken for Bordas & Bordas – are dedicated to advertising and marketing campaigns undertaken for clients in Pittsburgh, Allegheny County and elsewhere in western Pennsylvania.

4.  Plaintiff Christopher J. Regan ("Regan") is a citizen of the Commonwealth of Pennsylvania. Regan is an experienced attorney who practiced at the Bordas & Bordas law firm

for over 21 years, from mid-2000 through December 31, 2021. During that time, Regan enjoyed considerable success as a litigator, developing a substantial practice focusing on complex litigation, trial work and appeals.

## JURISDICTION AND VENUE

5. This Court has original, diversity jurisdiction over this dispute by virtue of 28 U.S.C. § 1332(a)(1), in that the parties are citizens of different States and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00).

6. Venue is proper in this Court by virtue of 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2), in that each of the Defendants are entities having the capacity to sue and be sued in their own, respective names under applicable West Virginia law, are subject to this Court's personal jurisdiction and, therefore, may be deemed residents of this judicial district.

## GENERAL ALLEGATIONS

7. At times relevant to the allegations set forth in this Complaint, Regan was a Member of Bordas & Bordas, Bordas Mineral and Wheelhouse, with a percentage ownership interest in each entity. As to Bordas & Bordas, Regan's percentage ownership interest was eighteen percent (18%). As to Bordas Mineral, Regan's percentage ownership interest was ten percent (10%). As to Wheelhouse, Regan's percentage ownership interest was eighteen percent (18%).

8. At times relevant to the allegations set forth in this Complaint, a written agreement entitled "Professional Limited Liability Operating Agreement of Bordas & Bordas, PLLC" (hereafter, "Bordas & Bordas Operating Agreement"), a copy of which is attached as Exhibit 1, governed the affairs of Bordas & Bordas, the conduct of its business and relations among its Members.

9. When the Bordas & Bordas Operating Agreement was entered into on or about July 18, 2018, its Members included Regan, James G. Bordas, Jr., Linda M. Bordas, Scott S. Blass, James G. Bordas, III and Geoffrey C. Brown. James G. Bordas, Jr. and Linda M. Bordas were designated as "Founding Members," having founded the predecessor of Bordas & Bordas.

10. With respect to non-Founding Members such as Regan, the Bordas & Bordas Operating Agreement provides, in part, that any Member who withdraws by voluntarily leaving Bordas & Bordas "shall be entitled to distribution of the balance of his or her capital account" and "shall not be entitled to any other form of compensation and shall have no further interest in [Bordas & Bordas] or any of its assets and/or income."

11. In contrast to Bordas & Bordas, there is no operating agreement or other agreement regulating and governing the affairs of Bordas Mineral, the conduct of its business or relations among its Members.

12. Because Bordas Mineral lacks an operating agreement or other similar agreement, there is no agreement addressing the distributional interest or other compensation to which a Member of Bordas Mineral is entitled upon withdrawal by voluntarily leaving the company.

13. In contrast to Bordas & Bordas, there is no operating agreement or other agreement regulating and governing the affairs of Wheelhouse, the conduct of its business or relations among its Members.

14. Because Wheelhouse lacks an operating agreement or other similar agreement, there is no agreement interest addressing the distributional or other compensation to which a Member of Wheelhouse is entitled upon withdrawal by voluntarily leaving the company.

15. In the absence of an agreement addressing compensation due a member upon his withdrawal and dissociation from an at-will West Virginia limited liability company such as

{L0870590.1 }

Bordas Mineral and Wheelhouse, West Virginia Code § 31B-7-701(a)(1) requires such company to purchase the member's distributional interest "for its fair value determined as of the date of the member's dissociation if the member's dissociation does not result in a dissolution and winding up of the company's business."

16. In 2021, Regan rightfully gave notice of his express will and intent to withdraw and dissociate from Bordas & Bordas, Bordas Mineral and Wheelhouse, effective on a date to be determined. After discussion Bordas & Bordas, Bordas Mineral and Wheelhouse preferred, and the parties ultimately agreed, that Regan's withdrawal and dissociation would be effective December 31, 2021.

17. Notwithstanding Regan's withdrawal and dissociation, Bordas & Bordas, Bordas Mineral and Wheelhouse have all continued to operate, with none of these entities dissolving or winding up its business.

18. Notwithstanding the disputes described herein, Bordas & Bordas, Bordas Mineral and Wheelhouse have each refused to disclose to Regan full and complete documentation from which the distributional interests or other compensation to which Regan is entitled may be calculated in accordance with generally accepted accounting principles.

19. The claims set forth hereafter arise out of a disagreement between Regan and the Defendants resulting from Regan's withdrawal and dissociation and each Defendant's failure to pay Regan the distributional interest to which he is entitled.

## COUNT I

## **BREACH OF BORDAS & BORDAS OPERATING AGREEMENT**

20. Regan incorporates by reference the allegations set forth in Paragraphs 1 through 19 of the Complaint as if fully restated

21. Pursuant to the Bordas & Bordas Operating Agreement, Bordas & Bordas kept and maintained Capital Accounts for each of its Members, including Regan.

22. In accordance with the Bordas & Bordas Operating Agreement, each Member's Capital Account was established so as to reflect (a) the Member's capital contributions, (b) increases for any net income or gain of Bordas & Bordas consistent with the percentage of the Member's ownership interest, (c) decreases for distributions made to the Member and (d) decreases for any net losses and deductions of Bordas & Bordas consistent with the percentage of the Member's ownership interest.

23. The Bordas & Bordas Operating Agreement provides, in part, that during each fiscal year, the net profits and net losses of Bordas & Bordas (other than from capital transactions) and each item of income, gain, loss, deduction or credit entering into the computation thereof, are to be credited or charged, as the case may be, to the Capital Accounts of each Member in proportion to the Member's percentage ownership interest.

24. The Bordas & Bordas Operating Agreement further provides, in part, that except as otherwise provided for in such Agreement or required by law, distributions of cash receipts of Bordas & Bordas (other than from capital transactions), are to be allocated among the Members in proportion to each Member's percentage ownership interest.

25. The Bordas & Bordas Operating Agreement further provides, in part, that complete, accurate records and books of Bordas & Bordas' transactions are to be kept and maintained in accordance with generally accepted accounting principles.

26. The Bordas & Bordas Operating Agreement further provides, in part, that the business and affairs of Bordas & Bordas shall be conducted and managed in accordance with such Agreement (the terms and conditions of which are incorporated in this Paragraph by reference as if fully restated) and the laws of the State of West Virginia.

27. Based on generally accepted accounting principles, and taking into consideration income derived from other sources, including Paycheck Protection Program loans and Employee Retention Tax Credits for which Bordas & Bordas was entitled and to which Regan's Bordas & Bordas Capital Account was entitled to be credited in an amount proportionate to Regan's percentage ownership interest, the effective balance of Regan's Bordas & Bordas Capital Account as of December 31, 2021 was or should have been at least One Hundred Ninety-Three Thousand Seven Hundred Fifty-Five Dollars ($193,755).

28. Although Bordas & Bordas knew or should have known that Regan's Bordas & Bordas Capital Account, effective December 31, 2021, had a positive balance consistent with the foregoing allegations, Bordas & Bordas failed to distribute to Regan the effective balance of his Bordas & Bordas Capital Account, has persisted in such failure through the date on which this Complaint is filed and in doing so, has asserted Regan should pay money to Bordas & Bordas to dissociate, all in breach of the Bordas & Bordas Operating Agreement.

29. As a result of Bordas & Bordas' breach of Bordas & Bordas Operating Agreement, Regan has suffered injury and damages.

WHEREFORE, Regan demands that judgment be entered in his favor and against Bordas & Bordas for not less than the sum of One Hundred Ninety-Three Thousand Seven Hundred Fifty-Five Dollars ($193,755) or such other sum as the evidence and application of generally accepted accounting principles may demonstrate to be the effective value of his Bordas & Bordas Capital Account upon his withdrawal and dissociation from Bordas & Bordas; that the Court award Regan pre-judgment and post-judgment interest; that the Court award Regan the attorney fees and other expenses reasonably incurred in connection with this dispute; and that the Court grant Regan such additional or alternative relief as may be deemed appropriate under applicable law.

## COUNT II

### BORDAS MINERAL'S FAILURE TO PURCHASE STATUTORY DISTRIBUTIONAL INTEREST OF REGAN, IN VIOLATION OF WEST VIRGINIA'S UNIFORM LIMITED LIABILITY COMPANY ACT

30. Regan incorporates by reference the allegations set forth in Paragraphs 1 through 29 of the Complaint as if fully restated.

31. There being no agreement to the contrary, Bordas Mineral was required by West Virginia Code § 31B-7-701(b) to deliver to Regan a purchase offer for Regan's distributional interest within thirty (30) days of the date of Regan's withdrawal and dissociation from the company, accompanied by a statement of the company's assets and liabilities as of the date of dissociation; Bordas Mineral's latest available balance sheet and income statement and an explanation of how the estimated amount of the purchase offer payment was calculated. Bordas Mineral failed to do so.

32. Furthermore, Bordas Mineral failed to agree or make any offer to purchase Regan's distributional interest within one hundred twenty (120) days of the date of Regan's dissociation from the company, as required and contemplated by West Virginia Code § 31B-7-701(d).

33. Instead, and contrary to West Virginia law, Bordas Mineral belatedly proposed to distribute to Regan an amount it represented to be the balance of his Bordas Mineral Capital Account on December 31, 2021, the date of Regan's withdrawal and dissociation. Even then, Bordas Mineral knew or reasonably should have known that its proposed distribution to Regan was contrary to generally accepted accounting principles, taking into consideration income it derived from other sources, including Paycheck Protection Program loans and Employee Retention Tax Credits.

34. Bordas Mineral's failure to make and convey to Regan a purchase offer for the fair value of his distributional interest in the company continues to this date, and has been arbitrary, vexatious and not in good faith.

35. As a result of Bordas Mineral's failure to timely convey to Regan the fair value of his distributional interest in the company, Regan has suffered injury and damages.

WHEREFORE, Regan demands that judgment be entered against Bordas Mineral for the fair value of his distributional interest as to that company and other damages; that the Court award Regan pre-judgment and post-judgment interest; that the Court award Regan the attorney fees and other expenses reasonably incurred in connection with this dispute; and that the Court grant Regan such additional or alternative relief as may be deemed appropriate under applicable law.

## COUNT III

### ALTERNATIVE CLAIM
### FOR BREACH OF OPERATING OR OTHER AGREEMENT (IF ANY) ADDRESSING DISTRIBUTIONAL INTEREST OF REGAN UPON DISSOCIATION AND WITHDRAWAL FROM BORDAS MINERAL

36. Regan incorporates by reference the allegations set forth in Paragraphs 1 through 35 of the Complaint as if fully restated.

37. Notwithstanding the absence of an operating agreement or other agreement regulating and governing the affairs of Bordas Mineral, the conduct of its business or relations among its Members, and the absence of any agreement addressing the distributional interest or other compensation to which a Member of Bordas Mineral is entitled upon withdrawal by voluntarily leaving the company, Bordas Mineral has nevertheless insisted that, by virtue of a prior agreement that Bordas Mineral has yet to disclose, Regan is entitled only to the distribution of the balance of his Bordas Mineral Capital Account as it existed on December 31, 2021, the effective date of Regan's dissociation and withdrawal from the company.

38. Bordas Mineral did, in fact, keep and maintain Capital Accounts for each of its Members, including Regan.

39. Taking into consideration generally accepted accounting principles and **in**come derived from other sources, including Paycheck Protection Program loans and Employee Retention Tax Credits for which Bordas Mineral was entitled and to which Regan's Bordas Mineral Capital Account was entitled to be credited in an amount proportionate to Regan's percentage ownership interest, the effective balance of Regan's Bordas Mineral Capital Account as of December 31, 2021 was or should have been greater than Bordas Mineral has represented it to be.

{L0870590.1 }

40. Notwithstanding Bordas Mineral's contention that Regan is entitled to the distribution of the balance of his Bordas Mineral Capital Account as it existed on December 31, 2021, Bordas Mineral has nonetheless failed to convey to Regan any payment whatsoever.

41. Therefore, if Bordas Mineral demonstrates the existence an operating agreement or other agreement regulating and governing the affairs of Bordas Mineral, the conduct of its business or relations among its Members, including any agreement addressing the distributional interest or other compensation to which a Member of Bordas Mineral is entitled upon withdrawal by voluntarily leaving the company, Bordas Mineral is in breach of any such agreement, and Regan has suffered injury and damages as a result of such breach.

WHEREFORE, Regan demands in the alternative that judgment be entered in his favor and against Bordas Mineral for damages including but not necessarily limited to such a sum as the evidence and application of generally accepted accounting principles may demonstrate to be the effective value of his Bordas Mineral Capital Account upon his withdrawal and dissociation from Bordas Mineral; that the Court award Regan pre-judgment and post-judgment interest; that the Court award Regan the attorney fees and other expenses reasonably incurred in connection with this dispute; and that the Court grant Regan such additional or alternative relief as may be deemed appropriate under applicable law.

## COUNT IV

### WHEELHOUSE'S FAILURE TO PURCHASE STATUTORY DISTRIBUTIONAL INTEREST OF REGAN, IN VIOLATION OF WEST VIRGINIA'S UNIFORM LIMITED LIABILITY COMPANY ACT

42. Regan incorporates by reference the allegations set forth in Paragraphs 1 through 41 of the Complaint as if fully restated.

43. There being no agreement to the contrary, Wheelhouse was required by West Virginia Code § 31B-7-701(b) to deliver to Regan a purchase offer for Regan's distributional interest within thirty (30) days of the date of Regan's withdrawal and dissociation from the company, accompanied by a statement of the company's assets and liabilities as of the date of dissociation; Wheelhouse's latest available balance sheet and income statement and an explanation of how the estimated amount of the purchase offer payment was calculated. Wheelhouse failed to do so.

44. Furthermore, Wheelhouse failed to agree or make any offer to purchase Regan's distributional interest within one hundred twenty (120) days of the date of Regan's dissociation from the company, as required and contemplated by West Virginia Code § 31B-7-701(d).

45. Instead, and contrary to West Virginia law, Wheelhouse belatedly proposed to distribute to Regan an amount it represented to be the balance of his Wheelhouse Capital Account on December 31, 2021, the date of Regan's withdrawal and dissociation. Even then, Wheelhouse knew or reasonably should have known that its proposed distribution to Regan was contrary to generally accepted accounting principles, taking into consideration income it derived from other sources, including Paycheck Protection Program loans and Employee Retention Tax Credits.

46. Wheelhouse's failure to make and convey to Regan a purchase offer for the fair value of his distributional interest in the company continues to this date, and has been arbitrary, vexatious and not in good faith.

47. As a result of Wheelhouse's failure to timely convey to Regan the fair value of his distributional interest in the company, Regan has suffered injury and damages.

WHEREFORE, Regan demands that judgment be entered against Wheelhouse for the fair value of his distributional interest as to that company and other damages; that the Court award

Regan pre-judgment and post-judgment interest; that the Court award Regan the attorney fees and other expenses reasonably incurred in connection with this dispute; and that the Court grant Regan such additional or alternative relief as may be deemed appropriate under applicable law.

## COUNT V

### ALTERNATIVE CLAIM
### FOR BREACH OF OPERATING OR OTHER AGREEMENT (IF ANY) ADDRESSING DISTRIBUTIONAL INTEREST OF REGAN UPON DISSOCIATION AND WITHDRAWAL FROM WHEELHOUSE

48. Regan incorporates by reference the allegations set forth in Paragraphs 1 through 47 of the Complaint as if fully restated.

49. Notwithstanding the absence of an operating agreement or other agreement regulating and governing the affairs of Wheelhouse, the conduct of its business or relations among its Members, and the absence of any agreement addressing the distributional interest or other compensation to which a Member of Wheelhouse is entitled upon withdrawal by voluntarily leaving the company, Wheelhouse has nevertheless insisted that, by virtue of a prior agreement that Wheelhouse has yet to disclose, Regan is entitled only to the distribution of the balance of his Wheelhouse Capital Account as it existed on December 31, 2021, the effective date of Regan's dissociation and withdrawal from the company.

50. Wheelhouse did, in fact, keep and maintain Capital Accounts for each of its Members, including Regan.

51. Taking into consideration generally accepted accounting principles and **in**come derived from other sources, including Paycheck Protection Program loans and Employee Retention Tax Credits for which Wheelhouse was entitled and to which Regan's Wheelhouse Capital Account was entitled to be credited in an amount proportionate to Regan's percentage ownership

{L0870590.1 }

interest, the effective balance of Regan's Wheelhouse Capital Account as of December 31, 2021 was or should have been greater than Wheelhouse has represented it to be.

52. Notwithstanding Wheelhouse's contention that Regan is entitled to the distribution of the balance of his Wheelhouse Capital Account as it existed on December 31, 2021, Wheelhouse has nonetheless failed to convey to Regan any payment whatsoever.

53. Therefore, if Wheelhouse demonstrates the existence an operating agreement or other agreement regulating and governing the affairs of Wheelhouse, the conduct of its business or relations among its Members, including any agreement addressing the distributional interest or other compensation to which a Member of Wheelhouse is entitled upon withdrawal by voluntarily leaving the company, Wheelhouse is in breach of any such agreement, and Regan has suffered injury and damages as a result of such breach.

WHEREFORE, Regan demands in the alternative that judgment be entered in his favor and against Wheelhouse for damages including but not necessarily limited to such a sum as the evidence and application of generally accepted accounting principles may demonstrate to be the effective value of his Wheelhouse Capital Account upon his withdrawal and dissociation from Wheelhouse; that the Court award Regan pre-judgment and post-judgment interest; that the Court award Regan the attorney fees and other expenses reasonably incurred in connection with this dispute; and that the Court grant Regan such additional or alternative relief as may be deemed appropriate under applicable law.

**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL MATTERS TRIABLE BY A JURY.**

Date: <u>May 16, 2023</u>　　　　　　By: _____
　　　　　　　　　　　　　　　　　　Avrum Levicoff, Esq. [PA Bar ID #26044]
　　　　　　　　　　　　　　　　　　Robert L. Hogan, Esq. [PA Bar ID #315452]
　　　　　　　　　　　　　　　　　　The Levicoff Law Firm, P.C.
　　　　　　　　　　　　　　　　　　4 PPG Place, Suite 200
　　　　　　　　　　　　　　　　　　Pittsburgh, PA 15222
　　　　　　　　　　　　　　　　　　(412) 434-5200